*980 OPINION.
Smith:
In each of these proceedings original and amended petitions were filed which recited numerous assignments of error. At the hearing, however, counsel for the petitioner relied on, and the testimony adduced relates to, only the issues as to whether—
(1) The statute of limitations has run with respect' to the collection of the additional assessments for the years 1918 and 1919.
(2) There was erroneously excluded from invested capital $900,-000 representing the aggregate par value of certain shares of its capital stock issued to the Cudahy Packing Co. and Armour & Co. as a part of the consideration for certain contracts.
(3) There was erroneously excluded from invested capital $136,-000 paid by the petitioner for the enlargement of one of its packing plants and charged to expense upon the petitioner’s books of account.
(4) There was erroneously excluded from invested capital $94,-913.47 paid in connection with a change of the channel of the Floyd River and charged to expense upon the petitioner’s books of account.
(5) The petitioner, in the alternative, is entitled to special assessment for the year 1920.
With respect to the limitations issue, it appears that for the years 1918 and 1919, the five-year period expired on June 13, 1924, and *981 March 14, 1925, respectively. Jeopardy assessments of additional tax for the year 1918, amounting to $20,496.54, and of an additional tax for the year 1919, amounting to $1,901.87, were made in March, 1924, prior to the expiration of the respective five-year periods. On January 26, 1924, the petitioner and the respondent consented to an extension of the statutory period for assessment and collection of taxes for the calendar year 1918 for one year. On December 1, 1924, the petitioner and the respondent consented to an extension of time for assessment and collection of taxes for the calendar years 1918 and 1919 for a period of one year after the expiration of any waiver then on file with the respondent. On December 1, 1925, the petitioner and the respondent consented to a further extension of the time within which assessments for the years 1918 and 1919 could be made. In a letter dated January 16, 1926, the petitioner was advised that the respondent had rejected claims in abatement of the additional taxes assessed in March, 1924, for the years 1918 and 1919. The petitioner appealed to the Board from the respondent’s notice of rejection of the claims in abatement on February 20, 1926, and the appeal relating to the years 1918 and 1919 was pending before’ the Board at the date of the enactment of the Revenue Act of 1926.
Counsel for petitioner, on brief, contends that although the respondent duly and regularly agreed with the petitioner for the assessment and collection of taxes due for the years 1918 and 1919 at a date after the expiration of the statutory period of limitations, he subsequently revoked and rejected such agreements on his part and proceeded to assess deficiencies in taxes prior to the expiration of the respective five-year periods, and that the consents of January 26, 1924, and December 1, 1924, all contemplated the assessment and collection of taxes for the years 1918 and 1919, determined to be due after the date of their execution and after the statutory periods for making assessments and collections had expired. Furthermore, that from the wording of the consents they were not intended to affect determinations, assessments, or collections of taxes determined and assessed prior to the expiration of the respective statutory periods for making assessment and collection and were intended to cover determinations, assessments, or collections of taxes that might be found to be due for the years 1918 and 1919, after the respective periods for assessment and collection thereof had expired.
We are not impressed with the foregoing reasoning of counsel for the petitioner. There is an unbroken chain of consents extending the period for collection of the taxes in dispute and we are of the opinion that the respondent is entitled to predicate his action with respect to collection of the additional assessments thereon. Conse *982 quently, this issue must be resolved in favor of the respondent. Florsheim Bros. Dry Goods Co. v. United States, 280 U. S. 453.
In the second issue the petitioner complains that the respondent has understated its invested capital for the years in controversy by the amount of $900,000, this being the aggregate par value of the capital stock issued to the Cudahy Packing Co. under the agreements of April 1,1895, and November 17, 1897, and to Armour & Co. under the agreement of May 1, 1901. The respondent has denied the claim of the petitioner upon this point on the ground that the contracts had expired prior to the taxable years involved. Our findings show, however, that the contracts had not fully expired prior to 1918.
Section 326 of the Revenue Act of 1918 permits the inclusion in invested capital of—
(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * *
and — ■
(4) Intangible property bona fide paid in for stock' or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.
We are satisfied from the evidence that a large part of the value of the contracts made by the Cudahy Packing Co. and Armour <& Co. with the petitioner did not vanish with the expiration of the contracts. For the contracts the petitioner turned over to these packing companies valuable real estate (to the Cudahy Packing Co a tract of land of approximately 12 acres with buildings thereon), and issued to the packing companies the shares of capital stock in question. It clearly was not the contemplation of the petitioner or of the packing companies that they would discontinue their operations in Sioux City upon the expiration of the contracts. The relationship which the petitioner established with the Cudahy Packing Co. and Armour & Co. was approximately as valuable to the petitioner in 1918 as in the years when the contracts were entered into between the petitioner and the packing companies. The self-interest of the packing companies would prompt them to continue this relationship even though the contracts had expired. Cf. Gauley Mountain Coal Co. v. Commissioner, 23 Fed. (2d) 574.
The record is silent as to' the value of these contrácts to the petitioner either at the date the contracts were first acquired or dur *983 ing the taxable years involved. The petitioner asks us to assume that the contracts had a cash value to the petitioner at the time they were acquired not only of $900,000 but of $900,000 in excess of the petitioner’s investment in the packing plants, which were conveyed to the packing companies as part consideration for the contracts, which investment, with the exception of $136,000 to be considered below, was included in invested capital and not disturbed by the respondent in his computation of invested capital. In the circumstances of the case we are not able to determine from the evidence that the contracts had a cash value to the petitioner at any time in excess of the cash investment of the petitioner in the properties actually conveyed to the packing companies in order to induce them to operate packing plants at Sioux City. The determination of the respondent upon this point is friona facie correct. The evidence of record does not, in our opinion, establish the claim of the petitioner that it is entitled to include in invested capital any part of the $900,000 disallowed by the respondent.
The third contention of the petitioner is that it is entitled to include in invested capital $136,000 representing the cost to it of improvements made to the packing plant that was subsequently conveyed to Armour & Co. The amount spent for these improvements was originally charged to expense. If the amount had been capitalized, as it should have been, we apprehend that no question would have arisen with respect to the right of the petitioner to include in invested capital the $136,000. The failure of the petitioner properly to account for the $136,000 on its books of account in the years 1903 to 1906, inclusive, does not warrant the exclusion from invested capital of the $136,000 in question. Goodell-Pratt Co., 3 B. T. A. 30. The contention of the petitioner upon this point is sustained.
With respect to the fourth issue, counsel for the respondent on brief states that:
If tlie taxpayer has proved the expenditure of money in 1903 to 1906, inclusive, in changing the course of the Moyd River and has proved that the amounts so spent were charged against surplus, they may properly be restored to invested capital.
We agree with this position of the respondent. Goodell-Pratt Co., supra. We have found as a fact that the amount of $94,913.47 was spent by the petitioner in connection with the change in the course of the Floyd River and was charged to expenses. The accounting made for the expenditures which were of a capital nature operated to reduce earned surplus to the extent of $94,913.47. The amount in question should be restored to earned surplus and included in invested capital.
*984 The special assessment issue raised alternatively by the petitioner must be resolved in favor of the respondent. The respondent determined that the petitioner and affiliated companies had a net income for 1920 of $231,580.86, and an invested capital of $2,656,846.15, and computed an excess-profits tax due of $3,206.63. We have ruled that the petitioner is entitled to have its invested capital for 1920 increased by the amounts of $136,000 and $94,913.47. These increases will further reduce the excess-profits tax payable. Section 327 (d) of the Revenue Act of 1918 provides in part:
Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. * * *
It is inconceivable that an excess-profits tax liability of $3,206.63, further reduced by the increases allowed to invested capital, would work an exceptional hardship upon a group of corporations having a total net income of $231,580.86.
Reviewed by the Board.

Judgment will be entered under Rule 50.

Steenhagen and Murdock dissent.